UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**PIRTEK USA, LLC,**

**Plaintiff,**

**-vs-** **Case No. 6:06-cv-566-Orl-31KRS**

**RICHARD WILCOX & WILCOX, LLC,**

**Defendants.**

---

# ORDER

Pirtek USA LLC ("Pirtek") moves the Court for a preliminary injunction pursuant to Rule 65 of the Federal Rules of Civil Procedure, arguing that Richard Wilcox and Wilcox LLC (collectively referred to as "Wilcox") continue to violate a restrictive covenant signed by the parties as part of a franchise agreement.[1]

## I. Background

On June 24, 2003, Pirtek and Wilcox entered into a franchise agreement ("the Agreement") which granted Wilcox a license to operate a Pirtek franchise and use the Pirtek trade names, trademarks, and service marks within a designated territory in the New Orleans, Louisiana area for a period of ten years. (Doc. 1-4 at 6, 7, 35; Doc. 2-5 at 6). As part of the Agreement, Wilcox executed a personal guaranty in which he individually and personally agreed to be bound by the terms and conditions of the Agreement. (Doc. 2-5 at 5). Among other provisions, the Agreement

[1] Pirtek's Motion appears at Doc. 2. The parties' franchise agreement appears at Doc. 1-4.

required Wilcox to complete Pirtek's training program, to purchase and resell only Pirtek-approved hoses, and to provide "management reports" on a monthly basis. (Doc. 1-4 at 11, 15, 17). The Agreement calls for the application of Florida law, (Doc. 1-4 at 32), and contains a restrictive covenant which provides:

> **Noncompetition**. You (including specifically Principal Owner and also any Personal Guarantors as described in Section 16.F) may not engage as an owner, partner, director, officer, franchisee, employee, consultant, agent or in any other capacity in any business that sells products and services similar to the products and services sold by a P[irtek] business within the Territory or 15 miles of the Territory or any Promotional Zone or the territory or promotional zone of any other P[irtek] center for a period of 2 years after expiration or termination of this Agreement. In addition, for the same 2-year period, you may not employ or seek to employ any person who is at that time employed by any other P[irtek] franchise or center or otherwise directly or indirectly induce such person to leave his or her employment. You expressly agree that the 2-year period and 15-mile radius are the reasonable and necessary time and distance needed to protect us if the Agreement expires or is terminated for any reason.

(Doc. 1-4 at 24). Wilcox operated his authorized Pirtek franchise for more than two years before Pirtek terminated the Agreement.

The parties' accounts surrounding termination of the Agreement are inconsistent, but certain facts are clear. On December 21, 2005, counsel for Pirtek first sent Wilcox a Notice of Default which stated that he was engaging in conduct that breached the Agreement, and demanded that he cure that breach within 30 days or face termination. (Doc. 1-5 at 4). Among other things, the letter included claims that Wilcox purchased hose and fittings from an unapproved supplier, and failed to provide several monthly management reports. (Doc. 1-5 at 4, 5). Wilcox did not comply, and on February 7, 2006, counsel for Pirtek issued a Notice of Termination, which provided for a 30-day period for Wilcox to "wind-up" his business. (Doc. 1-5 at 9). Almost immediately thereafter, Wilcox was barred from accessing critical Pirtek databases and computer

systems. (Doc. 34 at 2). Wilcox received notice of his termination sometime between February 11, 2006 and February 13, 2006. A Final Notice of Termination was sent on April 5, 2006, which listed March 13, 2006 as the effective date of termination. (Doc. 1-5 at 16).

On April 27, 2006, Pirtek filed its motion for a preliminary injunction, alleging that Wilcox is operating a competing hose installation and repair business in violation of the covenant not to compete. (Doc. 3 at 7; Doc. 2-5 at 11, 12).[2] Wilcox claims that the restrictive covenant is unenforceable, and that the Notice of Default and his subsequent termination were retaliatory responses to an arbitration filing in which some franchisees alleged significant overcharging by Pirtek USA for products required to be stocked and sold. (Doc. 37 at 8). Today, Wilcox owns and operates a hose installation and repair business with 24-hour mobile support in the New Orleans area under the name "Hose Guys." (Doc. 2-4 at 4). Pirtek seeks to enjoin Wilcox from violating the restrictive covenant as set forth in section 12.C of the Agreement. (Doc. 1-4 at 24).

## II. Legal Standards

To issue a preliminary injunction, a party seeking relief must establish: (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable injury if the injunction were not granted; (3) that the threatened injury to the plaintiffs outweighs the harm an injunction may cause the defendant; and (4) that granting the injunction would not disserve the public interest. *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1306 (11th Cir. 1998). In considering

---

[2] Additionally, Pirtek alleged certain trade name, trademark, and service mark infringements, as well as violations of the Agreement's post-termination provisions. (Doc. 3 at 6, 7). However, as stipulated by the parties during an evidentiary hearing, the only claim that remains relevant to the Motion for Preliminary Injunction is that concerning the restrictive covenant at section 12.C of the Agreement. (Doc. 1-4 at 24).

these four prerequisites, courts should be mindful that a preliminary injunction is an extraordinary and drastic remedy which should not be granted unless the movant clearly carries the burden of persuasion. *Suntrust Bank v. Houghton Mifflin Co.*, 252 F.3d 1165 (11th Cir. 2001) (*citing Canal Auth. of State of Fla. v. Callaway*, 489 F.2d 567, 572 (5th Cir. 1974));[3] *Siegel v. Lepore*, 234 F.3d 1163, 1176 (11th Cir. 2000).

## III. Analysis

### A. The Likelihood of Success on the Merits

Florida Statute § 542.335 dictates whether the Court may enforce a restrictive covenant between these parties. Fla. Stat. § 542.335. Under § 542.335, the party seeking enforcement must establish the existence of one or more legitimate business interests to justify the covenant. Fla. Stat. § 542.335(1)(b).[4] In addition, the restrictive covenant must be reasonably necessary to protect the legitimate business interest or interests justifying the restrictive covenant. Fla. Stat. § 542.335(1)(b) and (1)(c); *N. Am. Prods. Corp. v. Moore*, 196 F. Supp. 2d 1217, 1228 (M.D. Fla. 2002). A mere desire to avoid competition is not a legitimate business interest. *Advantage Digital Sys. v. Digital Imaging Servs.*, 870 So. 2d 111, 116 (Fla. 2d DCA 2003). If the plaintiff can

---

[3] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit Court of Appeals adopted the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981 as binding precedent on all federal courts within the Eleventh Circuit.

[4] Legitimate business interests under § 542.335 include, but are not limited to: "1. Trade secrets, as defined in s. 688.002(4). 2. Valuable confidential business or professional information that otherwise does not qualify as trade secrets. 3. Substantial relationships with specific prospective or existing customers, patients, or clients. 4. Customer, patient, or client goodwill associated with: a. An ongoing business or professional practice, by way of trade name, trademark, service mark, or "trade dress"; b. A specific geographic location; or c. A specific marketing or trade area. 5. Extraordinary or specialized training." Fla. Stat. § 542.335(1)(b).

establish its *prima facie* case, the burden shifts to the defendant to show that the restriction is overbroad, overlong, or otherwise not reasonably necessary to protect the established interests of the plaintiff. Fla. Stat. § 542.335(1)(c); *Autonation, Inc., v. O'Brien*, 347 F. Supp. 2d 1299, 1304 (S.D. Fla. 2004).

Pirtek claims it has a legitimate business interest in:

> (1) protecting the goodwill associated with P[irtek][] [m]arks and business system in and around New Orleans and elsewhere; (2) protecting the confidential information provided to Wilcox in connection with his former franchise; (3) barring Wilcox from using the knowledge and customer contacts he acquired as a P[irtek][] franchisee to compete against other P[irtek][] authorized franchisees; (4) protecting the substantial relationships and customers that the P[irtek][] name has developed and acquired in the New Orleans area; (5) re-franchising the relevant market free from interference from Wilcox, who has "inside information" about how Pirtek USA and its franchisees operate; and (6) preventing other franchisees from thinking that they simply can abandon their franchise agreements and immediately convert their franchises into independent, competing businesses.

(Doc. 3 at 10-11). Pirtek describes its business as a unique "system," requiring specialized training and operations. The Court rejects this contention. Pirtek's business model is not unlike that of its former competitors in New Orleans or its competition across the country. The equipment and time-sensitive mobile hose repair concept are not unique. (Doc. 34 at 3, 4). The business model provides prompt service to a large geographic area, but the operations and technology are not complex. (Doc. 3 at 3). Pirtek technicians simply exchange failed hoses and fittings with newly fabricated replacements. Any skilled mechanic with a modicum of training could accomplish such a task. Similarly, the hose and fitting products used by Pirtek franchisees are standard in the industry, akin to a fungible commodity. In other words, there is nothing special about a Pirtek hose that sets it apart from other comparable hoses available in the marketplace. Because such techniques and information are commonly known in the industry and not unique to Pirtek, they are

not confidential and therefore not entitled to protection. *See Autonation, Inc.,* 347 F. Supp. 2d at 1304 (noting that information commonly known in an industry and not unique to the allegedly injured party is not confidential and is not entitled to protection).

The only difference between Pirtek's service and that of its competitors is that Pirtek boasts of an estimated time of arrival of less than one hour upon receiving a service call. While commendable, this does not make Pirtek's service a unique "system," because other companies also provide time-sensitive mobile hose repair service.

The only statutory factor that militates in favor of Pirtek is the fact that Wilcox is presently serving many of the customers previously served by his Pirtek franchise. (Doc. 2-5 at 11; Doc. 3 at 7). Wilcox admits that he took his existing customer list with him following receipt of the Notice of Termination, but claims no customer list was provided as part of the Agreement. (Doc. 34 at 5). And it appears Pirtek has made no effort to refranchise this territory. "In determining the enforceability of a restrictive covenant, a court [] may consider as a defense the fact that the [party] seeking enforcement no longer continues business in the area [] that is the subject of the action..." Fla. Stat. § 542.335(1)(g)(2). As Wilcox has established, Pirtek does not currently operate a franchise in the New Orleans area or within at least 200 miles of his former promotional zone. (Doc. 37 at 14).

Regardless, the customers were those of the franchisee, not Pirtek. Pirtek's customers are the franchisees themselves. If any substantial customer relationships were developed, they were developed by the franchisee. (*See, e.g.* Doc. 34 at 5, 6). Admittedly, this customer base was developed under the auspices of a Pirtek franchise, but given the rather fundamental nature of the Pirtek business model it cannot be concluded that Pirtek's connection to the franchisee's

customers supports a legitimate business interest. Therefore, Pirtek has failed to establish a legitimate business interest to protect against competition in the New Orleans area. Where, as here, the restrictive covenant is unsupported by a legitimate business interest, the covenant is "unlawful and is void and unenforceable." Fla. Stat. § 542.335(1)(b); *N. Am. Prods. Corp.,* 196 F. Supp. 2d at 1228 n.44. Thus, there can be no substantial likelihood that Pirtek will prevail on the merits of the case.

**B. Irreparable Injury**

Even if Pirtek could establish a legitimate business interest, the presumption of irreparable harm raised under section 542.335(1)(j) is rebuttable, not conclusive. Fla. Stat. § 542.335(1)(j); *Passalacqua v. Naviant, Inc.*, 844 So. 2d 792, 796 (Fla. 4th DCA 2003). Pirtek argues that unless the Court enjoins Wilcox from violating the restrictive covenant it will suffer irreparable injury through a loss of goodwill developed from having a presence in the New Orleans territory as well as harm to its existing franchise relationships and system. (Doc. 3 at 13). This claim is, at best, speculative. *See Siegel*, 234 F.3d at 1176-77 (emphasizing that irreparable injury must be neither remote nor speculative, but actual and imminent). Indeed, if there was foreseeable harm in Wilcox operating a competing hose business, the harm would not be irreparable but compensable through money damages. *Pirtek USA, LLC, v. Zaetz*, 408 F. Supp. 2d 81, 86 (D. Conn. 2005); *see also Siegel*, 234 F.3d at 1194 n.4 (indicating that the injury suffered by a plaintiff is irreparable only if it cannot be undone through monetary remedies).

**II. Conclusion**

The mere desire to avoid competition does not constitute a legitimate business interest, and Pirtek has failed to proffer an otherwise legitimate business interest to support the restrictive

covenant and is, therefore, unlikely to prevail on the merits of this case. Further, Pirtek failed to establish a substantial threat of irreparable injury. Having determined that Pirtek has failed to establish these elements, the Court declines to address the remaining elements and concludes that Pirtek is not entitled to preliminary injunctive relief. Accordingly, it is

**ORDERED THAT** Pirtek's Motion for a Preliminary Injunction (Doc. 2) is **DENIED**.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on June 21, 2006.

**GREGORY A. PRESNELL**
**UNITED STATES DISTRICT JUDGE**

Copies furnished to:

Counsel of Record
Unrepresented Party